IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| EXITEXCHANGE CORP., a Texas corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>CASALE MEDIA INC., an Ontario corporation; ADCHEMY, INC., a Delaware corporation; BELO CORP., a Delaware corporation; BELO INTERACTIVE, INC., a Delaware corporation; CPX INTERACTIVE LLC, a New York limited liability company; EXPONENTIAL INTERACTIVE, INC., a Delaware corporation; MEDIAFIRE LLC, a Texas limited liability company; OPTIMAX MEDIA DELIVERY LLC, a California limited liability company; PULSE 360, INC., a Delaware corporation; SUBURBAN COMMUNITY NEWSPAPERS, LLC, a Mississippi limited liability company; TRAFFICMARKETPLACE, INC., a Delaware corporation; VALUECLICK, INC., a Delaware corporation; THE WEATHER CHANNEL INTERACTIVE, INC., a Georgia corporation.<br><br>        Defendants. | CASE NO. 2:10-cv-297-TJW<br><br>**Jury Trial Demanded** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO REMOVE
CONFIDENTIAL DESIGNATION ON PATENT RULE 3-1 CLAIM CHARTS AND
<u>RESET TIMES IN THE AGREED DISCOVERY ORDER</u>**

**Table of Contents**

I.     Introduction..................................................................................................................1
II.    Background..................................................................................................................1
III.   Plaintiff's claim charts were properly designated confidential............................................2
       A.   "confidential or proprietary technical, scientific, or business information that is
            not generally known, that would not normally be revealed to third parties"...........3
       B.   "disclosure would be detrimental to the conduct of the [Plaintiff's] business".......3
       C.   It "is not included in the exceptions to eligibility identified below.".....................5
IV.    Defendants' other arguments .......................................................................................5
       A.   Defendants' argument 1: The claim charts rely on
            publicly available information. ...............................................................................5
       B.   Defendants' argument 2: They will suffer prejudice. .............................................6
       C.   Defendants' argument 3: In re Violation of Rule 28(D)..........................................7
       D.   Fractus...................................................................................................................8
V.     Extension of deadlines. ................................................................................................9
VI.    Conclusion. ................................................................................................................11

i

## Table of Authorities

**Cases**

*Fractus*, *S.A. vs. Samsung Co.*,
   Case No. 6:09-cv-203-LED-JDL (E.D. Tex. June 7, 2010) ........................................................ 9

*In re Violation of Rule 28 (d)*,
   635 F.3d 1352 (Fed. Cir. 2011)............................................................................................. 7, 8

*TiVo, Inc. v. Echostar Communs. Corp.*,
   516 F.3d 1290, (Fed. Cir. 2008)............................................................................................ 10

**Rules**

Fed. R. Civ. Pro. 26.................................................................................................................... 4

**I.     Introduction**

ExitExchange files this brief in opposition to Defendants' motion to remove confidential designation on patent rule 3-1 claim charts and resetting times in the agreed discovery order.

ExitExchange's claim charts are entitled to remain confidential because (i) the Court has entered a Protective Order that expressly defines what information may be designated as "Confidential Information" in this case, and (ii) ExitExchange's claim charts fall within that definition.  In addition, since the Protective Order provides that Defendants' attorneys, expert consultants, and designated in-house representatives have full access to the confidential information, Defendants' ability to prepare their case and produce documents is not impaired. Accordingly, Defendants' motion to remove the confidential designation from Plaintiff's claim charts and delay the deadlines for the invalidity contentions and document production should be denied.

**II.    Background**

Plaintiff served its infringement contentions on Defendants on March 29, 2011.  Plaintiff designated the charts accompanying its infringement contentions "Confidential Attorneys Eyes Only."  At the time that the infringement contentions were served, there was no protective order in place.  *See* Ex. A at 1; Ex. B at 1.

The parties subsequently circulated competing versions of a protective order.  The parties reached agreement on all items except whether the following category should be eligible for designation: "documents or information that has been discerned through legal examination of the accused product itself without the use of Defendants' Confidential, or Confidential Attorneys' Eyes Only Information, which includes all the claim charts provided as the Rule 3-1 disclosure."

1

Dkt. 208 at 1-2. Plaintiff's position was that the category should be eligible for designation; Defendants disagreed. *Id.*

On May 20, 2011, the Court entered a Protective Order. Dkt. 222. The Order adopted Plaintiff's view, and did not include language excluding claim charts from being designated confidential. *Id.* Following entry of the Protective Order, the Court issued an order explaining its decision, stating, "In this Court's view, documents such as claim charts may contain information that is confidential technical or business information that is not generally known, that would not normally be revealed to third parties, and for which its disclosure would be detrimental to the party's business. . . . Therefore, the Court will allow, generally, documents such as claim charts to be deemed confidential." Dkt. # 223 at 1-2.

**III.   Plaintiff's claim charts were properly designated confidential.**

Defendants fail to acknowledge that the Court's Protective Order provides the governing standard for designating information as confidential. It provides:

> "Confidential Information shall mean all information . . . that constitutes confidential or proprietary technical, scientific, or business information that is not generally known, that would not normally be revealed to third parties, for which its disclosure would be detrimental to the conduct of the designating party's business, and which is not included in the exceptions to eligibility identified below."

 *See* dkt. 222, ¶1.

As explained below, ExitExchange's claim charts satisfy each of the three criteria under the Court's order because they (A) "constitute[]confidential or proprietary technical, scientific, or business information that is not generally known, that would not

2

normally be revealed to third parties," (B) "disclosure would be detrimental to the conduct of the designating party's business, and" (C) the claim charts are "not included in the exceptions to eligibility identified" in the protective order.

> A. **"confidential or proprietary technical, scientific, or business information that is not generally known, that would not normally be revealed to third parties"**

The claim charts explain how, in Plaintiff's view, the elements of Defendants' methods satisfy the elements of the claims. This information is confidential business information that is not generally known and is not normally revealed to third parties.

The business of ExitExchange (and its parent) is online advertising, focused particularly on the market for pop-under advertising. Hunter decl. ¶2. Using its Patent, ExitExchange seeks to control the market for pop-under advertising and maintain a competitive edge by carefully restricting the terms under which competitors may offer pop-under advertising. *Id.* ¶3. In conducting its business, ExitExchange does not generally disclose to third parties detailed information as to how its Patent claims read on particular systems. *Id.* It has never done so, except under conditions where the third party was obligated to keep that information confidential. *Id.* Accordingly, the information is confidential business information that is not generally known or revealed to third parties.

> B. **"disclosure would be detrimental to the conduct of the [Plaintiff's] business"**

In addition, the disclosure of such information would be detrimental to the conduct of ExitExchange's business. As discussed above, an important aspect of ExitExchange's business is controlling the market for pop-under advertising using its patent monopoly. ExitExchange faces an aggressive set of competitors in an industry that pays little regard for intellectual property rights. Among the obstacles that ExitExchange faces are competitors who desire to (a) design around the patent claims, or more likely (b) design a system that, even if it in fact still

infringes, allows the competitor to at least raise a plausible non-infringement argument, thereby providing the competitor legal cover to continue its ongoing infringement.  Competitors would have a much easier time of accomplishing these goals (particularly the second one), if they had ready access to ExitExchange's detailed description of how the claims read on Defendant's systems.

Defendants themselves admit that this detriment is real.  They assert that, "without disclosure of the basis for the infringement claim, Defendants' personnel are prevented from effectively designing around ExitExchange's patent."  Defendants' Motion, dkt. # 206 ("Defs.") at 9.  This is also true for other competitors who are not defendants in this lawsuit.

Defendants respond that the general public would benefit if ExitExchange's competitors could design "new and possibly better or cheaper functional equivalents."  *Id*.  But such a benefit to the general public would come at the detriment of ExitExchange, which is why this information satisfies the second criteria for "Confidential Information" in the Protective Order.  The general public would nearly always benefit (in the short run) from the disclosure of business trade secrets.  But the law gives businesses the right to keep those secrets, even during litigation, because society is better off in the long run when businesses are permitted to exploit their confidential commercial information.  *See, e.g.* Fed. R. Civ. Pro. 26(c)(1)(G) (the Court may issue a protective order to protect a party from revealing "a trade secret or other confidential research, development, or commercial information").  As a result, the Court's Protective Order does not contain an exception for information whose disclosure may potentially benefit the general public.

Another detriment that ExitExchange will suffer from public disclosure of its infringement contentions is that competitors can use the information outside of litigation to

4

impose costs and delay on ExitExchange. Among the common tactics are for Defendants to provide the information to third parties to use as a basis for filing declaratory judgment actions in other venues, or to manufacture reexamination proceedings. Such tactics are designed to discourage a patent holder from enforcing its patent, by increasing the costs of doing so and by delaying (often by years) the final resolution of an infringement action. Such costs and delay would be a direct detriment to ExitExchange's business.

Defendants assert that it is "important for members of the public to understand the argued scope of patents if they are to respect them or successfully challenge an improper patent claim." Defs. at 7. The claim language, coupled with the specification and prosecution history, provide ample notice of claim scope to those who are interested in respecting the Patent. But ExitExchange's concern is with those (such as Defendants and other competitors) who do not seek to respect the Patent, but instead, seek to use information obtained in litigation for purposes outside of litigation to undermine ExitExchange's competitive advantage.

In sum, there is no genuine dispute that "its disclosure would be detrimental to the conduct of the designating party's business."

### C. It "is not included in the exceptions to eligibility identified below."

Finally, the Protective Order does not contain any exception to eligibility that applies to the claim charts. Accordingly, the claim charts are properly marked confidential under the protective order.

## IV. Defendants' other arguments

### A. Defendants' argument 1: The claim charts rely on publicly available information.

5

Defendants assert: "[the] claim charts merely apply the claims of the patent to internet screen captures, publicly available code, and links to internet web sites." Defs. at 6. This argument fails.

The claim charts contain a confidential description of how, in Plaintiff's view, the elements of Defendants' methods satisfy the elements of the claims. This description includes a number of elements that, taken separately would not be confidential, such as excerpts from the patent claims, website screen captures, links, and code gathered by Plaintiff on various websites. *See, e.g. D*efs. Exh. 1 at 4. That the confidential description is constructed in part from building blocks that are not independently confidential does nothing to erase the fact that the description as a whole is highly confidential. For example, a business's confidential customer list or supplier list may be comprised entirely of the names of companies that are well-known to the general public. This does not make the list non-confidential.

**B.    Defendants' argument 2: they will suffer prejudice.**

Defendants next assert that the confidentiality designation "vitiates the policy underlying Patent Rules 1-1 and 1-2," which "allow the defendants in patent actions to promptly be made aware of the reason why they were being sued and defend themselves in court." Defs. at 6. Similarly, Defendants assert that they cannot challenge infringement or validity "if a plaintiff's interpretation of its patent is not disclosed during judicial proceeding." *Id.* at 7. This argument fails.

The agents that Defendants have specifically retained to analyze and respond to ExitExchange's infringement claims are Defendants' lawyers and Defendants' expert consultants. Those agents have full access to the information under the terms of the Court's Protective Order. In addition, that Order provides that two designated employees of each party

6

can receive the confidential information, so long as the employee has executed Exhibit B.  Dkt. 222, ¶9(f).   To the extent that any Defendant has a particularized need to disclose the information to an additional employee third or party, that Defendant may do so with Plaintiff's prior written consent.  Dkt. 222, ¶9(h).  Defendants fail to explain why such disclosures are insufficient.

        C.      **Defendants' argument 3:** *In re Violation of Rule 28(D).*

Defendants next argue that the claim charts are not confidential under *In Re Violation of Rule 28(d)*. The issue in the *Rule 28(D)* case was whether a "brief submitted by Defendants-Appellants contain[ing] extensive confidentiality markings pertaining to case citations, direct quotations from published opinions of the cases cited, and legal argument, none of which appear[ed] to fall under the protective order entered by the district court" was properly marked confidential under Federal Circuit Rule 28(d).  *In re Violation of Rule 28 (d)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011); *see* Fed. Cir. Rule 28(d) (governing briefs containing material subject to a protective order). That is not the case here, and Defendants' argument under *Rule 28(d)* fails for four reasons.

First, as explained above, Plaintiff's claim charts fall within the definition of "confidential information" under the protective order entered in this case. *Cf. In re Violation of Rule 28 (d)*, 635 F.3d 1352, 1360 (Fed. Cir. 2011) ("Here, the confidentiality markings in the brief of Defendants-Appellants went well beyond the scope of the protective order").

Second, *Rule 28(d)* was concerned with whether legal argument, including case citations and case quotes, were confidential. *Id.* ("marking as confidential of legal argument concerning the propriety of a decision by the court is generally inappropriate"). In contrast, the claim charts

7

do not contain any legal arguments, case citations, or case quotes.  Instead, the charts explain where, in Plaintiff's view, aspects of the claims are found in Defendants' methods, and provide examples based on Defendants' methods.

Third, *Rule 28(d)* was concerned about court filings and court proceedings.  For example, Rule 28(d) governs briefs filed with the Federal Circuit, *see* Fed. Cir. Rule 28(d)), not disclosures given to opposing counsel during litigation, such as claim charts, *id.* at 1356 (a "presumption of public access" applies to "*judicial* records and documents . . . this common law right of access establishes, as a general matter, that *court files* should be open to the public" (emphasis added) (internal alteration marks omitted)).  In addition, there is no reason to think that a presumption of public access should apply to all litigation-related documents.  Many documents that are created in the course of litigation have no presumption of public access.  For example, there is no presumption that discovery documents, settlement agreements, or expert reports are public.

Fourth, even with respect to court files, "public right of access . . . has been denied where court files might have become a vehicle for improper purposes, for example as sources of business information that might harm a litigant's competitive standing." *Id.* at 1356-57.  As explained above, Plaintiff's claim charts may be used by Defendants or third parties for purposes outside of this litigation and to the detriment of ExitExchange.  Accordingly, Plaintiff's confidentiality designation should be upheld.  *See id.* at 1360 (Rule 26(c)(1)(G) allows protection of "commercial information that has competitive significance.").

        **D.**    *Fractus.*

Defendants' assertion that infringement contentions cannot be designated under *Fractus, S.A. vs. Samsung Co.* is also wrong.  In *Fractus*, the parties agreed to a Protective Order that

carved out "information that has been discerned through legal examination of the accused product itself," such as the claim charts. *See Fractus*, Case No. 6:09-cv-203-LED-JDL (E.D. Tex. June 7, 2010). Here, the protective order does not contain such language. *See* Dkt. #223 (holding that *Fractus* is not controlling here because "Magistrate Judge Love did not allow the plaintiff's contentions to be entitled to a confidentiality designation in that case *based on the previously entered protective order*." (emphasis in original)).

## V.   Extension of deadlines.

Defendants next assert that, based on Plaintiff's confidential designation, the following deadlines should be moved "by a period corresponding to the time between when the patent charts were to be disclosed and when the 'Confidential' designation is removed":

- The deadline for Defendants' invalidity contentions,
- The deadline for Defendants' document production accompanying the invalidity contentions, and
- The deadline for Defendants to produce documents. Defs. at 10.

As explained below, the deadlines should not be extended.

Defendants argue that their ability to provide invalidity contentions and prepare their defenses is impaired by Plaintiff's confidentiality designation. Defs. at 19 (asserting that since they do not have "a proper understanding of claim interpretation used by ExitExchange, defendants are hampered in preparing its defenses, since claim interpretation for infringement are to be also applied for purposes of claim scope in invalidity analysis."). This argument fails.[1]

---

[1] Defendants' motion as to the deadline for invalidity contentions appears to be moot, because Defendants provided their invalidity contentions on May 20, 2011, without the need for any extension. In any event, that portion of the motion should also be denied on the merits.

Defendants cannot base their invalidity analysis on Plaintiff's infringement read, or Plaintiff's implied claim construction in its infringement analysis. *TiVo, Inc. v. Echostar Communs. Corp.*, 516 F.3d 1290, 1311-12 (Fed. Cir. 2008). In *Tivo*, Defendants wanted their invalidity expert to argue invalidity based on Plaintiff's infringement analysis. *Id.* The district court "refused to allow him to testify about how [Plaintiff's] infringement analysis would affect the issue of invalidity." *Id.* The Federal Circuit affirmed, reasoning that an invalidity analysis must "compare the construed claims to the prior art," not Plaintiff's infringement view. *Id.* Accordingly, Defendants' assertion that they need Plaintiff's infringement analysis to develop their invalidity defense is wrong.

Moreover, as explained above, the very individuals that Defendants have specifically retained to provide invalidity contentions, prepare their defenses, and review and collect their documents (e.g. their lawyers and expert consultants) have full access to the confidential material. Under this Court's Protective Order, Defendants' attorneys and expert consultants have access to the information in the claim charts. Dkt. 222, ¶9. It also provides that two designated employees of each party can receive the confidential information, so long as the employee has executed Exhibit B. *Id.*, ¶9(f). In addition, to the extent that any Defendant has a specific need to disclose the information to an additional employee or third party, that Defendant may do so with Plaintiff's prior written consent. *Id.*, ¶9(h). Since Defendants' attorneys, expert consultants, and designated in-house employees have access to the confidential materials, Defendants' should have no difficulty preparing their defenses and collecting documents relevant to the litigation. Accordingly, an extension of time based on Plaintiff's confidentiality designation is not warranted.

10

## VI.     Conclusion.

For the foregoing reasons, Defendants' motion to remove confidential designation on patent rule 3-1 claim charts and resetting times in the agreed discovery order should be denied.


Dated:  May 31, 2011                                                                 Respectfully submitted,

By: */s/ Christin Cho*
Christin Cho (admitted to practice in the Eastern District of Texas)
CA State Bar No. 238173
E-mail: christin@dovellaw.com
Gregory S. Dovel (admitted to practice in the Eastern District of Texas)
E-mail: greg@dovellaw.com
CA State Bar No. 135387
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone:  310-656-7066
Facsimile:  310-657-7069

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, L.L.P.
Energy Centre
1127 Judson Road, Ste 220
P. O. Box 3999 (75606-3999)
Longview, Texas 75601-5157
Telephone: (903) 236-9800
Facsimile: (903) 236-8787
Email: capshaw@capshawlaw.com
Email: ederieux@capshawlaw.com


ATTORNEYS FOR PLAINTIFF
EXITEXCHANGE, CORP.

## **CERTIFICATE OF SERVICE**

      I hereby certify that the following counsel of record, who are deemed to have consented to electronic service are being served this 31st day of May 2011, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

                                      */s/ Christin Cho*
                                       Christin Cho